## PROSECUTION FOR MALICIOUS DESTRUCTION OF PROPERTY.

### Common Pleas Court of Licking County.

### FRANK ADAMS ET AL V. STATE OF OHIO.

Decided, January Term, 1910.

*Criminal Law—Probate Court Without Jurisdiction In a Case of Malicious Destruction of Property, When—Acting on Legal Advice May be Shown Where Malice is Charged—Right of Church Trustees to Protect the Church Property—Arraignment of Defendant Necessary in a Criminal Prosecution—Error in Charge of Court —Sections 10020 and 10021.*

1. Inasmuch as malicious destruction of property is a felony if the property destroyed is of the value of one hundred dollars or more, the probate court is without jurisdiction over a cause where the defendant is so charged.

2. Where malice is an essential ingredient of the offense, as for instance where the defendant is charged with the malicious destruction of a line fence, it is error to deny to him the privilege of showing to the jury that he acted on legal advice.

3. It is also error to charge the jury, in an action against trustees of a church for removing a fence supposed to divide the church property from the adjoining land, that they had no right to remove the fence unless they were the owners of the property individually; or to refuse to charge that they should be found not guilty, if it appeared that they had a right in the premises, as trustees on account of long use of the land by the church.

*J. R. Davies* and *Jones & Jones,* for plaintiffs in error.
*Smythe & Smythe,* contra.

SEWARD, J. (orally).

This is a proceeding in error brought in this court to reverse the proceedings of the probate court upon a trial wherein the state of Ohio was plaintiff below, and Frank Adams and Calvin D. Adams are plaintiffs in error here.

There are a number of errors complained of—some thirteen in the petition in error. The court will only refer to a few of

them because it does not think it necessary or profitable to refer to the others.

The charge against the Adamses, upon which they were tried in the probate court, was a charge of malicious desstruction of property, the property consisting of a fence. They were tried upon an information filed by the prosecuting attorney in the probate court.

Objection was made to the jurisdiction of the probate court to try the case. That is a very interesting feature of this case, because Section 6863, Revised Statutes (General Code, 12477) makes this case, in a certain view of it, a felony. It says that if the value of the property destroyed exceeds one hundred dollars, the party convicted shall be imprisoned in the penitentiary. If less than one hundred dollars it is a misdemeanor. Nobody could tell what the value of the property was until after the case was tried, and the jury did not find it. It seems to me absolutely necessary that the jury should find the value of the property destroyed in a case of this kind. Section 6863, Revised Satutes, reads as follows:

"Whoever maliciously destroys or injures any property not his own, shall, if the value of the thing destroyed, or the injury done, is one hundred dollars or more, be imprisoned in the penitentiary not more than seven years nor less than one year, or, if the value is less than that sum, be fined not more than five hundred dollars, or imprisoned not more than thirty days, or both."

I am quite satisfied that the probate court was without jurisdiction in this case. It might turn out to be a felony, and then the probate court would certainly not have jurisdiction; if the value of the property should be one hundred dollars or more, it would be a felony and punishable by imprisonment in the penitentiary; if under one hundred dollars it would be a misdemeanor; and the only way to tell is by the finding of the jury as to the value of the property.

Another objection urged is that the defendants were not arraigned. The record in this case does not show that they were arraigned at all; and the court thinks that the record should

show an arraignment of the defendants. They were not asked to plead, or required to plead.

The defendant offered to show to the jury in the probate court that they had taken counsel of an attorney at law, and that they acted on his advice in the matter. This was excluded by the probate court. I think in this kind of a case, where malice is an essential ingredient of the offense and the charge is malicious destruction of property, which might or might not be maliciously done, that the defendant should have a right to show to the jury that they had taken legal advice, as bearing upon the question as to whether they acted maliciously or otherwise.

In *Wharton's Criminal Law*, Section 1072a, this doctrine is laid down:

"An honest belief in title is a defense to an indictment for a malicious trespass. And this is peculiarly the case when the trespass is the removal of fences."

Why shouldn't it be so? The question at issue in this case was as to whether the defendants were acting maliciously or otherwise. They claimed to be acting as trustees of a church. It was claimed that the church had been abandoned as a church, or a place of worship, and the title reverted to Bailey. The Adamses went there; they were trustees of the church; they pulled out the posts and laid the fence to one side. The very question at issue was whether there was malice in doing the act. Malice is the doing of a wrongful act to the injury of another without any just cause or excuse. They might have had some reason; they might have believed that the fence belonged to the church, and that Bailey had no right to fence out the church people.

The court thinks the probate court committed an error in not permitting the defendants to show that they had taken legal advice from a person authorized to give such advice—an attorney at law.

The defendants requested the court to give a charge to the jury before the argument, and it was refused. That request is found on page 105 of this record:

"If the defendants acted in good faith believing they, as trustees, had a right to the premises on account of the long use of them, or on account of their belief that it was reserved to them in their deed, and that they had the actual right to do what they did, and acted in good faith, then they should be acquitted by you of this charge by a verdict of not guilty."

That would seem to be the law in this kind of a case. In the 78 Northwestern Reporter, at page 335, is a case very similar to this. It is a Michigan case. The question there was as to the destruction of a fence. I will read what the court say. This also was a church case:

"John C. Smith, one of the trustees of the society, testified that, a few years prior to the present trial, he was looking over the church ground with a view to locating sheds. The respondent was present and Smith stated to him that there was not room to locate the sheds and leave room to get across to them. The respondent replied: 'Why can't you go across mine? Go on and use my land. I am using yours. I want to use yours, and you use mine. We will be good-natured.' Smith replied: 'All right, you can use it until the church wants it for some other purpose.' It is true, this testimony was disputed, but we can not determine the facts. The circuit judge charged on this subject (and this charge was approved by the Supreme Court):
"If the respondent acted in good faith, believing he had a right to the premises on account of the long use of them, or on account of his belief that it was reserved to him in his deed, and that he had the actual right to do what he did, and acted in good faith, then he should be acquitted by you of this charge by a verdict of not guilty."

That is the exact language of the request made in the probate court, and it was refused.

Complaint is made of the charge as given. The jury were unavoidably required from this charge to render a verdict of guilty against these defendants. They made no claim of right to remove the fence, individually. They claimed that they were acting as trustees of the church in removing the fence; and the court charged the jury that, unless they were acting individually—in their individual capacity—and had a right to remove the fence individually, that they must be found guilty. That certainly

is not the law in this kind of a case.   The court said in the
charge to the jury:

"I say to you that the legal duty of a trustee of a church,
if you find that these men were trustees of this church, does
not embrace going out with a team of horses and tearing down
a fence.   As trustees of the church, these men had a perfect
right, if they saw that the rights of the church were injured,
to resort to the courts, which are open to the humblest citizens
of the land.   We must not take the law in our own hands and
resort to personal violence even if such a sacred thing as a
church is involved.   The trustees of the church could have come
into court and have had an injunction against maintaining that
fence, and if no right to maintain it existed the court would
have ordered it taken down."

That is a part of the charge on the question of the right to
remove the fence, as trustees:

"It is admitted that the fence was taken down; and of course,
that much destroyed as a fence—for the uses and purposes of
a fence it was destroyed, because it no longer enclosed the land.
And all that you need to inquire, in the first place is, who owned
that fence?   Whose fence was it?   If it was the fence of the
men who tore it down—if it belonged to them personally, and
not as trustees of some organization; if it was the individual
property of Frank and Calvin D. Adams, and they tore it down,
of course they committed no crime, and the verdict should be
not guilty.   It is your business to inquire into the evidence as
to who that fence belonged to; and the only importance of that
is to find out whether it belonged to Frank and Calvin D. Adams,
or whether it did not.   It does not matter, so far as the pur-
pose of this case is concerned, whether it belonged to Chester
Bailey, or to the Baptist Church.   It does not matter at all.
It does not matter whether it belonged to the Adamses.
"In reference to the title to this land:   There has been some
controversy about that.   It is unquestionably in Chester Bailey
—he is the owner, the legal owner, in fee simple—of this piece
of land, subject to a use by this Baptist Church as long as it is
in existence, according to the terms of this lease, or grant, or
whatever you wish to call it.   You will bear in mind that Chester
Bailey is the legal owner of the title to this land; but, I do
not know whether that bears on the case very much; the ques-
tion in this case is:   The malicious destruction of property, not

your own property but the property of some other, maliciously. That is all there is of it.''

Complaint is made of the charge to the jury on the question of ''reasonable doubt''—as to the definition of a reasonable doubt as given to the jury by the court. The court said:

''Now, let me say a word in regard to that phrase 'reasonable doubt.' It is juggled with a great deal by lawyers on both sides. It, of course, would not be right for this jury, or any other jury, to find any defendant guilty as long as a juror entertains any reasonable doubt of the guilt of the defendant.
''It is the duty of the state, as I have said, to convince you, beyond all reasonable doubt, that the defendant is guilty.''

This part of the charge is criticised, and I think with some justice:

''But, the doubt must be a reasonable one, as I have said; not a captious doubt; not a doubt that you raise up, or conjure, in your mind, for an excuse to acquit the defendant. But it must be such a reasonable doubt as would bring conviction to your minds in any of the ordinary business or daily affairs of life.''

A reasonable doubt does not usually bring conviction. It is the contrary. It leaves the mind unconvinced of the truth of the defendant's guilt.

So, taking this case altogether, I think there were errors here that are prejudicial to the rights of the defendants, and the case should be reversed. Sections 3779-1-2 give power to the trustees to protect churches; it is statutory.

The case will be reversed, and remanded.